UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| Terence S. Chancellor | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 14-cv-7712 |
| Bank of America N.A., successor by merger to BAC Home Loan Servicing LP; Select Portfolio Servicing, Inc; and J.P. Morgan Chase, | ) | Judge Sharon Johnson Coleman |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Pro se Plaintiff Terence Chancellor ("Chancellor") filed a fourteen count complaint against the investor on his mortgage, J.P. Morgan Chase ("JPMC"), his previous loan servicer, Bank of America, N.A. ("BANA"), and his current loan servicer, Select Portfolio Servicing, Inc. ("SPS"). Chancellor alleges various claims arising out of the defendants' failure to honor two loan modification agreements and provide Chancellor with requested information regarding his mortgage. Each defendant moved to dismiss all the claims brought against it under Rule 12(b)(6). For the reasons stated below, the Court grants the motions in part and denies in part.

**Background**

The following facts taken from the complaint are accepted as true for purposes of ruling on the motions to dismiss now before the Court. On February 17, 2006, Countrywide Full Spectrum Lending ("Countrywide"), a subsidiary of BANA, issued a mortgage loan ("the mortgage") to Chancellor. Dkt. 40 at 2. In February 2009, Countrywide and Chancellor entered into a loan modification contract ("the February 2009 modification"), which among other things, reduced the interest rate on the mortgage from 7.5 percent to 4.25 percent. *Id.* at 4-5. In April 2009, after

Chancellor submitted and Countrywide accepted Chancellor's first payment made pursuant to the February 2009 modification, Chancellor was informed that the servicer of his mortgage was now BAC Home Loan Servicing ("BAC Home"). *Id.* at 6. BAC Home at some point merged with BANA. *Id.* at 1. On May 1st, 2009 BAC Home requested from Chancellor a payment on his mortgage that was calculated using the original mortgage terms and not the February 2009 modification terms. *Id.* at 6-7. Chancellor spoke with a BANA customer service representative who orally informed him that there were "modification codes" related to the February 2009 modification in his account, but Chancellor could not obtain additional written acknowledgement of the February 2009 modification from BAC Home. *Id.* at 7.

In August 2009, pursuant to the Home Affordable Mortgage Program ("HAMP"), Chancellor entered into a trial payment plan agreement ("the TPP") with BAC Home. *Id.* at 11. The TPP provided that if Chancellor made 3 timely payments in September, October, and November 2009, he would be offered a permanent modification ("a HAMP agreement"). *Id.* Chancellor made the three timely payments and complied with BANA's requests for additional documents to confirm his eligibility for a HAMP agreement. *Id.* On or before June 2010, BANA became aware that Chancellor would not be offered a HAMP agreement, but it continued to solicit and collect TPP payments from Chancellor through the fall of 2010. *Id.* at 13. In November 2010, a BAC Home representative orally informed Chancellor that he would not be offered a HAMP agreement and that the party responsible for the denial of the HAMP agreement was the mortgage investor, JPMC. *Id.* at 12.

In 2011, the Illinois Attorney General's office helped Chancellor submit to BANA letters explaining his issues with his mortgage and requesting information. *Id.* at 7. BANA responded with two letters, sent in September and December 2011, that acknowledged a February 2008 loan modification and the TPP, but did not mention the February 2009 modification. *Id* at 8.

In December 2012, BANA offered Chancellor the opportunity to enter into a new TPP. *Id.* at 14. Chancellor did not sign and submit the new proposed TPP because he did not trust the TPP would be honored. *Id.*

In December 2013, Chancellor wrote to BANA asking for an explanation as to why BANA would not honor the February 2009 modification and for proof that JPMC was responsible for the failure to offer him a HAMP agreement. *Id.* at 16. Sometime during December 2013, servicing of the mortgage was transferred from BANA to SPS. *Id.* at 13.

In January 2014, Chancellor wrote to SPS disputing the amount of his debt and asking for at least three pieces of documentation or information: (1) the original investor on the loan, (2) verification of his debt, and (3) his original loan documents. *Id.* at 17, 28. Chancellor was not provided the information he requested. *Id.* at 17. Chancellor's January and February 2014 monthly statements from SPS showed interest rates of ".475%" and ".476%", respectively. *Id.* at 27, 32. In March 2014, Chancellor's monthly statement showed an interest rate of 7.5 percent and a $20,000 increase in his past due balance. *Id.* at 18, 33. After receiving his March 2014 monthly statement, Chancellor wrote to SPS asking for an explanation for the $20,000 increase on his balance, but SPS never responded to this request. *Id.* at 17.

In October 2014, after Chancellor filed his initial complaint in this case but before he had filed his amended complaint, SPS sent Chancellor a letter acknowledging the existence of the February 2009 modification and enclosing a "fully executed" copy. *Id.* at 40. The signature line for Chancellor on the February 2009 modification contained a signature and was dated February 18, 2009. *Id.* at 42. Although the signature line for Countrywide was blank, the document contained a notarization for the signature of Kenneth Hampton, dated October 15, 2015. *Id.* Kenneth Hampton is a document officer for SPS. *Id.* at 20.

Following the filing of Chancellor's amended complaint, Dkt. 40, BANA moved to dismiss, Dkt. 43. SPS and JPMC then also moved to dismiss. Dkt 46. In response to the motions to dismiss, Chancellor filed two motions which he called motions to strike affirmative defenses. Dkt. 53, 55. Wishing to clarify one of its arguments, BANA then filed an amended motion to dismiss. Dkt. 58. JPMC and SPS filed a reply to Chancellor's motion to strike affirmative defenses. Dkt. 61. Chancellor responded to BANA's amended motion with two motions to strike affirmative defenses and in opposition to the amended motion to dismiss. Dkt. 62, 63.

Before ruling on the substance of SPS and JPMC's motion to dismiss [46] and BANA's amended motion to dismiss [58], the Court strikes BANA's first motion to dismiss [43] and Chancellor's response thereto [55] as moot. The Court also strikes Chancellor's first motion in response to BANA's amended motion to dismiss [62] as redundant, as it is only one page which is substantially the same as the first page of his other motions to strike. As defendants have not yet answered the complaint nor asserted any affirmative defenses, the Court construes Chancellor's remaining motions to strike affirmative defenses [53] [63] as briefs in response to defendants' motions to dismiss [46] [58].

**Legal Standard**

A complaint will survive a motion to dismiss under Rule 12(b)(6) if its allegations when accepted as true state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must draw all reasonable inferences from the facts alleged in the complaint in the light most favorable to the plaintiff. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010). Complaints filed by pro se plaintiffs must be construed liberally and are held to a less stringent standard than pleadings drafted by lawyers. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011).

**Discussion**

At oral argument, Chancellor agreed to the dismissal with prejudice of Count III of his complaint. The remaining thirteen claims are dispensed with as follows.

*1. Breach of Contract Claims*

All three defendants move to dismiss the breach of contract claims brought against them arguing that Chancellor has failed to state a claim upon which relief can be granted. In order to plead a cause of action for breach of contract, a plaintiff must allege the existence of a contract, performance on the contract by the plaintiff, breach by the defendant, and damages. *W.W. Vincent & Co. v. First Colony Life Ins. Co.,* 814 N.E.2d 960, 967 (Ill. App. 2004).

Chancellor has met this standard with respect to Counts I, IV, and XI. In Count I, Chancellor alleged that Countrywide offered him the February 2009 modification, which he accepted by signing and returning the agreement within the prescribed timeframe. Dkt. 40 at 4-5. Chancellor performed on the contract by submitting payment in April of 2009. *Id.* at 6. The contract was then assumed by BANA on April 27, 2009. *Id.* BANA breached the contract beginning on May 1, 2009 by calculating Chancellor's debt using the pre-modification interest rate rather than the February 2009 modification interest rate. *Id.* at 6-7. In Count XI, Chancellor alleges that SPS, once it had assumed the contract from BANA, continued the breach by continuing to use the wrong interest rate. *Id.* at 18.

Chancellor's allegations with respect to Count IV are as follows. Chancellor entered into the TPP agreement with BAC Home in August 2009. *Id.* at 11. The terms of the agreement were that if Chancellor made three timely payments he would be offered a HAMP agreement. *Id.* Chancellor made three timely payments but was not offered a HAMP agreement. *Id.* at 11-12. A BAC Home representative orally told Chancellor the reason for the denial was that JPMC as the investor refused to provide a HAMP agreement. *Id.* at 12.

5

With respect to Count IV, JPMC argues that Chancellor has not sufficiently pled JPMC's involvement with the TPP. Dkt. 46 at 5. The Court does not agree. "Viewed as a whole, the complaint supports a plausible inference" that JPMC is a party to the TPP and that its obligation under the agreement was to offer Chancellor a permanent modification after he made his three timely payments. *Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1100 (7th Cir. 2015). This is sufficient for Chancellor's claim for breach of contract against JPMC to go forward.

BANA asserts a statute of frauds defense to both breach of contract claims brought against it, but Chancellor's complaint did not need to "anticipate or attempt to defuse" this affirmative defense. *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). Although a plaintiff may plead himself out of court by "alleging (and thus admitting) the ingredients of a defense," *id.*, Chancellor has not done so here.

The Illinois Statute of Frauds provides that there is no cause of action for the breach of "any contract for the sale of lands . . . or any interest concerning them . . . unless such contract . . . shall be in writing and signed by the party to be charged." 740 ILCS 80/2. Chancellor's failure to allege that BANA or any of its predecessors in interest signed the February 2009 modification or the TPP does not amount to an admission that they did not. Furthermore, even assuming *aruguendo* the agreements were never signed by any mortgagee, Chancellor may still be able to demonstrate his claim falls under one of the many exceptions to the statute of frauds.

Accordingly, with respect to Counts I and IV, BANA's motion to dismiss is denied. With respect to Counts IV and XI, SPS and JPMC's motion to dismiss is also denied.

*2. Fraudulent Concealment and Misrepresentation Claims*

BANA moves to dismiss Count II wherein Chancellor alleges that BANA fraudulently concealed the existence of the February 2009 modification by failing to mention it in the September 14, 2011 and December 20, 2011 letters. Dkt. 59 at 6-7. BANA correctly argues that "fraudulent

6

concealment" is a statutory tolling doctrine and not an independent cause of action. *Cangemi v. Advocate S. Suburban Hosp.,* 845 N.E.2d 792, 811 (2006); 735 ILCS 5/13-215. "However, allegations of fraud that may overlappingly satisfy [the fraudulent concealment statute] may potentially be sufficient to state an independent cause of action" for fraudulent misrepresentation. *Cangemi*, 845 N.E.2d at 811.

To state a claim for fraudulent misrepresentation, a plaintiff must allege "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Doe v. Dilling*, 888 N.E.2d 24, 35-36 (Ill. 2008). Concealment of a material fact may satisfy the first element of the claim when the defendant had a duty to disclose the omitted information. *Cangemi v. Advocate S. Suburban Hosp.*, 845 N.E.2d 792, 812 (Ill. App. 2006).

Count II does not state a claim for fraudulent misrepresentation by omission. First, a mortgagor-mortgagee relationship does not create a duty to disclose an omitted material fact. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 573 (7th Cir. 2012). Second, Chancellor did not allege that he relied on the omissions and was consequently injured by such reliance.

SPS moves to dismiss Count XII, containing Chancellor's allegations that SPS fraudulently concealed BANA's breach of the February 2009 loan modification by failing to respond to Chancellors' requests for information regarding the $20,000 increase to his March 2014 balance statement. *Id.* at 18. Count XII fails for the same reasons as Count II: SPS was not under a common law duty to disclose an omitted material fact and Chancellor did not allege he an injury caused by reliance on SPS's omission.

BANA and SPS also move to dismiss Counts V, VII, and XII, in which Chancellor complains of the following affirmative misrepresentations, respectively: BANA stated in the December 20, 2011

7

letter that JPMC was responsible for the failure to provide Chancellor with a HAMP agreement (and it may be proven that JPMC was not the responsible party); BANA stated that Chancellor had not complied with all of the terms of his 2013 TPP, when in fact Chancellor never entered into a 2013 TPP; Kenneth Hampton on behalf of SPS represented to a notary that he was an authorized representative of Countrywide when he was not. Dkt. 40 at 12, 14-15, 20.

Counts V, VIII, XIII for fraudulent affirmative misrepresentation fail because Chancellor has not alleged that he relied to his detriment on the alleged material misrepresentations. The Court understands Chancellor's concerns regarding the October 2015 notarization on the February 2009 modification. Indeed, it is evident that the notary attested to a signature which was not made in his presence, as Kenneth Hampton in fact never signed the line above the notarization. Such behavior certainly runs afoul of the duty of notaries. Nonetheless, Chancellor did not allege that he was injured due to relying on the notary's misrepresentation. Thus the notary's misbehavior, without more, does not create a claim which entitles Chancellor to relief.

Although Chancellor did not sufficiently plead allegations of fraud in the above mentioned counts, Count VI is a viable claim for fraudulent misrepresentation. In Count VI, Chancellor alleged that BANA knew in June through October of 2010 that Chancellor would not be offered a HAMP agreement, but represented to him through its monthly statements that he was still under consideration for one. Dkt. 40 at 13. The monthly statements induced Chancellor to continue to make payments pursuant the TPP. *Id.* While Chancellor did not specifically allege damages in connection with this inducement, it can be inferred from the complaint as a whole that Chancellor would not have continued perform on the TPP if he knew that BANA would not provide the promised offer of a HAMP agreement.

For the aforementioned reasons, the Court grants BANA and SPS' motions as to the fraudulent concealment claims and dismisses Counts II and XII with prejudice. Counts V, VII, and XII for

8

fraudulent misrepresentation are also dismissed with prejudice. However, BANA's motion to dismiss is denied as to Count VI.

*3. RESPA Violations*

BANA and SPS move to dismiss the RESPA claims brought against them in Counts VII, IX and X for failure to allege conduct actionable under RESPA.

Section 2605 of RESPA requires loan servicers to respond promptly to borrowers' requests for "information relating to the servicing of a loan." 12 U.S.C. § 2605 (e). The duty to respond is triggered upon receipt of a qualified written request ("QWR"), which is defined as a "written correspondence" from a borrower or his agent that states reasons why the borrower believes the account is in error or requests information with sufficient detail. § 2605 (e) (1) (B). The written request must also include the borrower's name and account or must otherwise enable the servicer to identify the borrower. *Id.* Within 30 days of receiving a QWR, the servicer must investigate the borrower's account and appropriately respond in writing to the written request. § 2605 (e) (2). With respect to a request regarding an error, the servicer must investigate the account and either make appropriate corrections and notify the borrower of the corrections, or explain to the borrower why the servicer believes the borrower's account is correct. *Id.* With respect to a request for information, the servicer must provide the requested information or explain to the borrower why the information is unavailable. *Id.* Borrowers have a private right of action for any violation of Section 2605. § 2605 (f).

Since Count VII contains no allegations of fraud, the Court will treat the claim as arising under RESPA, although it is titled a claim for "RESPA violation and HAMP fraud". Dkt. 40 at 13. Chancellor alleged he submitted a written request asking BANA to have JPMC send Chancellor a letter admitting that JPMC was responsible for the failure to provide Chancellor a HAMP

agreement. *Id.* Because such a request is neither a request for information nor an assertion of an error in Chancellor's account, Count VII fails to state a claim under RESPA.

In Count IX, Chancellor alleged he sent qualified written requests in December 2013 and again in March 2014 asking BANA "to explain the Breach of the [February 2009 modification]." Dkt. 40 at 15. By making such a request, Chancellor alerted BANA to an error he believed was present in his account: the February 2009 modification was not being acknowledged by the servicer. Chancellor also requested information: an explanation as to why the February 2009 modification was not being acknowledged. BANA argues that these issues "do not relate to the servicing of the loan," Dkt. 59 at 11, but the Court disagrees. Therefore, Count IX survives BANA's motion to dismiss.

SPS moves to dismiss Count X, in which Chancellor alleges he submitted two written requests to SPS that did not receive responses. SPS disputes that these written requests constitute QWRs because they do not include "a statement of reasons for the borrower's belief that the account is in error." Dkt. 46 at 8. The facts alleged indicate the first written request was a January 2014 letter disputing "the validity of the debt" and asking for at least three pieces of information: (1) the original investor on the loan, (2) verification of his debt, and (3) his original loan documents. The second request was a letter asking for an explanation as to why there was a $20,000 increase to Chancellor's balance in March 2014. Dkt. 40 at 16. SPS ignores that under the statute, a QWR need only include "sufficient detail to the servicer regarding other information sought by the borrower." §2605 (e) (1) (B) (ii). Furthermore, the Seventh Circuit has rejected the contention that a QWR must contain a statement of the reasons the account is in error:

> Any reasonably stated written request for account information can be a qualified written request. To the extent that a borrower is able to provide reasons for a belief that the account is in error, the borrower should provide them, but any request for information made with sufficient detail is enough under RESPA to be a qualified written request and thus to trigger the servicer's obligations to respond.

*Catalan v. GMAC Mortgage Corp.*, 629 F.3d 676, 687 (7th Cir. 2011).

BANA's motion to dismiss is therefore granted as to Count VII and denied as to Count IX. SPS's motion to dismiss as to Count X is denied.

*4. Intentional Infliction of Emotional Distress Claim*

SPS moves to dismiss Count XIV, wherein Chancellor alleges that SPS caused him emotional and physical distress when they created a web of red tape by continually inundating him with collection notices and new loan modification offers while refusing to provide him with accurate information on his current loan status. Dkt. 40 at 21. Although Chancellor's aggravation is understandable, the conduct of SPS alleged in Count XIV and throughout the complaint fails to rise to the requisite level of extreme and outrageous needed to sustain a claim for IIED. *See, e.g., Hardaway v. CIT Grp./Consumer Fin. Inc.*, 836 F. Supp. 2d 677, 686 (N.D. Ill. 2011) (Bucklo, J.) (refusal to modify and attempts to enforce a mortgage, without more, does not constitute extreme and outrageous behavior). Consequently, SPS's motion to dismiss as to Count XIV is granted.

*5. Failure to comply with Rules 8 and 10*

SPS argues that Chancellor's complaint should be dismissed in its entirety for failure to comply with Rules 8 and 10 because the complaint does not contain numbered paragraphs throughout and is not comprised of short and plain statements. *See* Fed. R. Civ. P. 8, 10. The Court has discretion to excuse the technical mistakes of a pro se plaintiff. *Collins v. Lochard*, 792 F.3d 828, 831 (7th Cir. 2015). Because the Court finds that Chancellor has put forth some viable claims, dismissing the complaint in its entirety so that Chancellor can refile it with shorter, numbered paragraphs would cause unnecessary delay. Instead, defendants may renumber Chancellor's complaint for the purpose of answering it.

**Conclusion**

For the foregoing reasons, BANA's amended motion to dismiss [58] is granted as to Counts II, III, V, VII, and VIII and denied with respect to Counts I, IV, VI, and IX. SPS and JPMC's motion

to dismiss [46] is granted as to Counts III, VII, XII, XIII, and XIV denied with respect to Counts IV, X, and XI. Counts II, III, V, VII, VIII, XII, XIII and XIV are dismissed with prejudice.

IT IS SO ORDERED.

SHARON JOHNSON COLEMAN
United States District Judge

DATED:  September 29, 2015