UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRENCE S. CHANCELLOR ) | |
| ) | |
| Plaintiff, ) | Case No. 14-cv-7712 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| BANK OF AMERICA N.A., successor by ) | |
| merger to BAC HOME LOAN SERVICING ) | |
| LP; SELECT PORTFOLIO SERVICING, ) | |
| INC.; and J.P. MORGAN CHASE; ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Terrence Chancellor, brought this action concerning his home mortgage against defendants Bank of America, N.A., Select Portfolio Servicing, Inc., and J.P. Morgan Chase. At the times relevant to the present motion, Chancellor's mortgage was serviced by Select Portfolio Servicing, Inc. ("SPS") and held by U.S. Bank, N.A., as trustee for J.P. Morgan Mortgage Acquisition Trust 2006-CW1 (collectively "the Trust"). The parties held a settlement conference before the magistrate judge and reached a tentative settlement. The defendants' subsequently sent Chancellor a draft of the written settlement agreement, which identified U.S. Bank, N.A. as a party to the agreement in its role as trustee for the J.P. Morgan mortgage acquisition trust. Chancellor, who did not understand the settlement to include U.S. Bank, immediately objected to its inclusion in the written agreement, and the parties were unable to resolve that dispute. The defendants filed a motion to enforce the settlement agreement, and Chancellor separately moved to join U.S. Bank, N.A. as a defendant in this action.

This Court has thoroughly reviewed the parties' testimony and evidence and has given detailed consideration to the written submissions before it. For the reasons set forth herein, this Court holds that Chancellor entered into a settlement agreement that included a release of his claims

1

against U.S. Bank, N.A., and accordingly grants the motion to enforce the settlement [95]. Chancellor's motion to join claims and parties [159] is therefore denied as moot.

**Procedural Background**

When Chancellor filed this case, he brought it against the entity that he believed held his mortgage, J.P. Morgan Chase ("Chase"), his previous mortgage loan servicer, Bank of America, N.A. ("BANA"), and his current loan servicer, Select Portfolio Servicing ("SPS"). Chancellor alleged that the defendants collectively breached two loan modification agreements and failed to provide Chancellor with requested information regarding his mortgage. Chancellor's complaint did not name the holder of his loan, U.S. Bank, N.A., as Trustee in trust on behalf of the JPMAC 2006-CW1 Trust ("the Trust").

The defendants filed motions to dismiss, which were granted in part and denied in part. Following that ruling, this Court appointed settlement assistance counsel and referred the matter to Magistrate Judge Schenkier for discovery and settlement supervision. Judge Schenkier held a settlement conference with the parties on February 23, 2016. Chancellor, although represented by settlement assistance counsel, engaged directly in the settlement negotiations. Following that hearing, Judge Schenkier filed a minute entry stating that a settlement had been reached and setting a March 16 status hearing so that the parties could report on their progress finalizing the settlement. At that hearing, it was disclosed that further discussions were needed between Chancellor, Chase, and SPS, and the matter was continued to another hearing date. By that date, Chancellor had executed a separate settlement with Bank of America but disputed whether a settlement had been reached as to the remaining defendants.

The defendants filed a motion to enforce the settlement, and the plaintiff filed a motion to join U.S. Bank National Association as an additional defendant in this action. Once those motions were fully briefed, this Court held a lengthy motion hearing at which both parties argued regarding

2

the facts of their settlement efforts and the merits of their respective motions. Following that hearing, and based on the parties' filings and arguments, this Court granted the motion to enforce the settlement and denied the motion to join a necessary party. Chancellor subsequently appealed to the Seventh Circuit which, in a succinct opinion, vacated and remanded the case to this Court so that a "full evidentiary hearing" might be held.[1]

On remand, this Court held an evidentiary hearing at which the defendants presented testimony from Chancellor and Michael Weik, one of the defendants' lawyers present at the settlement conference. The Court held a subsequent evidentiary hearing to ensure that Chancellor had adequate opportunity to present his own testimony regarding the settlement conference. Although Chancellor testified and presented evidence at both hearings, he failed to call any other witnesses at those hearings to support his factual claims. Following those hearings, and with the approval of the parties, the Court recruited counsel to assist Chancellor in once again exploring settlement options. Although those efforts were unsuccessful, appointed counsel, by leave of this Court, filed supplemental briefing concerning the pending motion to enforce the settlement before withdrawing his appearance.[2]

**Legal Standard**

---

[1] Judge Posner, in a one paragraph published opinion, wrote that:

> The plaintiff reached an oral agreement to settle a litigation arising out of a home mortgage loan to him, but the defendants insisted that as part of the settlement he would have to release any claims he had against another bank, and also a trust company, neither of which had been a party to the litigation. Although the district judge agreed with the defendants' position, it hasn't been proved that anyone had told the plaintiff during the settlement conference that by agreeing to the settlement he would also be releasing any claim he might have against the two nonparties to the litigation. Because there was no evidentiary proceeding, there was no basis for the judge's deciding that the plaintiff had agreed to release the claims against the nonparties. The judgment must therefore be vacated and the case remanded for a factual inquiry into the parties' disagreement.

As is the Seventh Circuit's common practice, this pro se appeal was decided without holding an oral argument.

[2] The Court thanks attorney Richard Friedman, of Neal & Leroy LLC, for accepting this Court's appointment and working diligently to represent the plaintiff's interests in this procedurally complex matter.

Enforcement of settlement agreements pertaining to federal claims is governed by state contract law. *Holmes v. Potter,* 552 F.3d 536, 539 (7th Cir. 2008). "Oral settlement agreements are enforceable under Illinois law if 'there is clearly an offer and acceptance of the compromise and a meeting of the minds as to the terms of the agreement.'" *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007). A meeting of the minds occurs when the parties' conduct objectively indicates an agreement to the terms of the settlement, even if one or more of the parties did not subjectively intend to be bound. *County Line Nurseries & Landscaping, Inc. v. Glencoe Park Dist.*, 46 N.E.3d 925, 932, 2015 IL App (1st) 143776, ¶ 33. The essential terms of the settlement must be sufficiently definite and certain such that a court can ascertain what the parties agreed to. *Dillard*, 483 F.3d at 507. The party seeking to enforce a settlement agreement bears the burden of proving the existence of that agreement by clear, convincing, and satisfactory evidence. *Kemp v. Bridgestone/Firestone, Inc.*, 625 N.E.2d 905, 909, 253 Ill.App.3d 858 (1993).

**Discussion**

The Court begins with one of the few facts beyond dispute. A settlement conference was held before Magistrate Judge Schenkier on February 23, 2016. Following that conference, Judge Schenkier issued a minute order reading "Settlement conference held. Settlement reached. The matter is set for a status conference with the magistrate judge on 3/16/16 at 9:00 a.m. for a report on the parties' progress in finalizing their settlement documentation."

Attorney Michael Weik, who represented the moving defendants at the settlement conference, testified during the evidentiary hearing concerning his recollection of the settlement conference. Attorney Jonathan Nusgart, Weik's co-counsel, also submitted a sworn declaration concerning his recollection of events. Both attorneys testified that the settlement conference began with each party presenting their positions with respect to the previously exchanged settlement letters, and that during this initial presentation the defendants disclosed that Chase was not a party

4

to the loan and that, as Chancellor conceded he had been previously informed, the mortgagee was U.S. Bank National Association, as Trustee in trust on behalf of the JPMAC 2006-CW1 Trust. Weik testified that Judge Schenkier subsequently asked why SPS could not release the mortgage, to which Weik replied that SPS was the loan's servicer and lacked the unfettered authority to unilaterally release the mortgage without the trustee's approval.

The parties subsequently caucused separately with Judge Schenkier. Both Weik and Nusgard represented that Judge Schenkier advised them that Chancellor was seeking a loan modification and that Weik informed Judge Schenkier that a modification would require approval from the trust. Weik testified that in a subsequent discussion he informed Judge Schenkier that SPS could do a loss mitigation review for all possible options, but that the settlement would have to resolve "all of the claims" and "everything" would have to be settled. According to Weik, Judge Schenkier conferred with Chancellor, and then returned to report that Chancellor wanted a certain dollar value, wanted to be reviewed for loss mitigation options, and understood that the settlement would resolve all of his claims and would involve both SPS and the trust. Judge Schenkier reconvened with the parties in the courtroom to outline the terms of the parties' agreement. Weik testified that he again stated that the agreement would require that Select Portfolio and the trust review Chancellor for all loss mitigation options. He also represented that he informed Chancellor that the defendants would want a written settlement agreement which would include, among other things, a release of all claims that he had against the loan servicers, trust, and trustee regarding his loan.

Weik and Nusgard both report that they subsequently e-mailed Chancellor a draft settlement agreement, which Chancellor rejected because he believed that he had not agreed to settle with and release the Trust. The parties' subsequent conversations were unable to resolve their dispute.

Chancellor contemporaneously objected to various portions of Weik's testimony based on its purported falsity. Chancellor testified that Weik never mentioned anything about the trust during

5

the settlement conference. Chancellor also testified that defense counsel had represented that Chase was not involved in his dispute and did not own his loan, and argued that these statements amounted to fraud. Chancellor claimed that he agreed to the settlement based on these representations, which led him to believe that he would later be able to pursue claims against the actual owner of his loan. Chancellor also testified at some length that no mention was made of executing a signed or written settlement agreement, either by the parties or by Magistrate Judge Schenkier, and that payment under the agreement was to have occurred within fourteen days.

The Court takes note that the documentary evidence before it in this case, including documents attached to Chancellor's complaint, establish that Chancellor had been repeatedly advised that his mortgage was held by U.S. Bank National Association, as Trustee, in trust on behalf of the JPMAC 2006-CW1 Trust and not by Chase prior to the initiation of this action. The Court further notes that, across numerous arguments and hearings, it has observed Chancellor to be a diligent litigant who pays careful attention to his case and zealously represents his interests even while represented by counsel. The Court is therefore dubious of Chancellor's claim that he did not understand the Trust's relevance to his case.

Based on the parties' testimony, there can be no doubt that Chancellor was informed, both at the settlement conference and through past communications, that the trust and trustee were the holders of his note. It appears to be undisputed that at the settlement conference the defendants informed him that Chase was unrelated to his case. The Court does not fathom how such a conversation could have occurred without clarification as to the role of the JPMAC 2006-CW1 trust and the distinction between the JPMAC 2006-CW1 trust and J.P Morgan Chase.

Defense counsel further testified that they repeatedly informed Chancellor and the Court that the loan modifications that Chancellor sought would require approval by the trust and trustee.[3] Weik credibly testified, and Nusgard credibly represented in his declaration, that Weik informed Chancellor in open court that the settlement would "resolve and settle all claims that Plaintiff had to date regarding his loan and the servicing of his loan" with respect to SPS and the Trust and that a written settlement agreement would need to be executed between the parties. Chancellor, who offered no evidence other than his own testimony, denied being informed that the settlement would release the Trust and swore that the parties' settlement had been oral, with no understanding between the parties that a written agreement would follow. The Court finds it incredible that the defendants would execute an oral settlement agreement in a case such as this or that the Magistrate Judge would permit ambiguity as to that point and concludes that Chancellor's representation that the parties never agreed to execute a written settlement agreement is not an accurate representation of their discussions. To the contrary, the evidence establishes that the defendants anticipated executing a written agreement and that Chancellor agreed to execute a written settlement agreement, with payment to be made fourteen days following the completion of the written settlement.

The Court finds it similarly implausible that, as Chancellor claimed, the actual holder of Chancellor's loan never came up during the course of settlement negotiations. Even if Chancellor himself failed to realize that the Trust and Trustee were part of the proposed settlement, this Court has no doubt that Weik truthfully testified that Chancellor was informed that the defendants require that the Trust and Trustee would be part of the settlement and that when he agreed to accept the settlement he objectively expressed his acceptance of those terms.

---

[3] Chancellor, relying on a 2006 prospectus, asserts that the loan servicer was given authority to modify the loan. The prospectus, however, establishes that the authority conferred was subject to the terms of the Service Agreement, which Chancellor has not placed before this Court. Chancellor, moreover, has failed to offer any evidence or testimony as to the actual limits on settlement counsel's authority at the time of the 2014 settlement conference that would be adequate to controvert Weik and Nusgard's representations that they could not settle without the Trust's involvement. Accordingly, the 2006 prospectus does not undermine this testimony.

7

Chancellor, in a final argument, asserts that the trust cannot be a party to the settlement because it was never before the Court. Chancellor, however, fails to offer any caselaw to support this argument. Although it is true that the Trust could have moved to intervene in this action, the availability of that procedural mechanism does not serve to preclude its participation in the negotiation of a settlement. A settlement is a private contractual agreement, and therefore is not subject to the same procedural requirements as participation in a lawsuit. This Court can see no reason why a private agreement to resolve a lawsuit could not incorporate third parties, and notes that settlement agreements often involve releases of claims against employees, officers, agents, and other non-parties to the agreement.

The Court accordingly concludes that there was a meeting of the minds between the parties as to the terms of their settlement, and that defendant's motion to enforce the settlement agreement must therefore be granted. In light of this ruling, Chancellor's subsequent motion to join claims and parties must be denied, because "Rule 15(b) does not provide for amending a complaint after settlement." *Herron v. City of Chicago*, 618 F. Supp. 1405, 1408 (N.D. Ill. 1985) (Will, J.).

**Conclusion**

For the foregoing reasons, the defendant's motion to enforce the settlement agreement [95] is granted and the plaintiff's motion to join claims and parties [159] is denied.

SO ORDERED.

_____
Sharon Johnson Coleman
United States District Court Judge

DATED: 8/20/2018